**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:

Q.Y. Tang's Hwa Yuan Inc.,

                      **Debtor.**
------------------------------------------------------------x

                             **Chapter 11**

                             **Case No. 23-11730 (DSJ)**

## DEBTOR AND LENDER'S JOINT PLAN OF REORGANIZATION

    Q.Y. Tang's Hwa Yuan Inc., debtor and debtor-in-possession (the "Debtor"), and Owemanco Mortgage NY Limited Partnership, as Co-Proponents, propose the following Joint Plan of Reorganization pursuant to the provisions of Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, et seq. (the "Code").

## ARTICLE I

### Definitions

    1.      "8th Avenue Inc." shall mean 243 Third Ave. Associates, Inc., the owner of the improved real property located at 98 8th Avenue, New York, NY 10011.

    2.      "53rd St. Inc." shall mean CLT 53 Real Estate Inc., the owner of the improved real property located at 236 East 53rd Street, New York, NY 10022.

    3.      "100% Owned Entities" shall mean the Restaurant and the Karaoke Bar.

    4.      "Accrued Professional Compensation" means, at any particular time, all accrued, contingent and/or unpaid fees and expenses (including Allowed Fee Claims) for legal, financial, advisory, accounting, real estate brokerage, and other services and reimbursement of expenses that are awardable and allowable under Bankruptcy Code §§328, 330(a) or 331 or otherwise rendered prior to the Confirmation Date by any Retained Professional in the Chapter 11 Case that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not been previously paid regardless of whether a fee application has been Filed for any such amount. To the extent that the Bankruptcy Court or any higher court denies or reduces by a Final Order any amount of a Retained Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

    5.      "Administrative Claim" means any Claim for costs and expenses of administration of the Estate under Bankruptcy Code §§503(b), 507(b) or 1114(e)(2), including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate; (b) Fee Claims; (c) all fees and charges, and any applicable interest, assessed against the Estate under chapter 123 of Title 28 of the United States Code, 28 U.S.C. §§1911-30; and (d) Claims arising under Bankruptcy Code §503(b)(9).

    6.      "Allowed Claim" (and any variation thereof including "Allowed Secured Claim" or "Allowed Unsecured Claim") shall mean a claim (i) for which a proof of claim has been filed

before the Confirmation Date; or (ii) a claim scheduled by Debtor and not listed as disputed, unliquidated or contingent; or (iii) a claim as to which no objection has been filed on or before seven (7) days prior to the Effective Date and which has been finally allowed pursuant to §§ 502, 503, 505 and/or 506 of the Code; or (iv) a claim agreed upon by a claimant and the Debtor, and which is set out in this Plan.

7.      "Amended Lease" shall mean the amended lease for the Property by and among the Restaurant and the New Owner, annexed hereto as Exhibit C.

8.      "Avoidance Actions" shall mean any and all Claims and causes of action which the Debtor, the debtor in possession, the Estate or other appropriate party in interest has asserted or may assert under sections 502(d), 510, 542, 543, 544, 545, 547 through 552 and 553(b) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

9.      "Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, and any amendments thereto applicable to this Chapter 11 Case.

10.     "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York, or such other court having jurisdiction over this Case or any proceeding within.

11.     "Bankruptcy Rules" means the Rules and Forms of Practice and Procedures in Bankruptcy promulgated under 28 U.S.C. § 2075, as amended, and the local rules and general orders of the Bankruptcy Court, as applicable to the Chapter 11 Case, with all amendments and modifications thereto.

12.     "Business Day" means any day other than Saturday, Sunday, or a "legal holiday," as that term is defined in Bankruptcy Rule 9006(a).

13.     "Carve-Out" shall mean the sum of the Professional Fee Claims incurred by the Debtor in connection with the Chapter 11 Case; *provided, however,* that in no event shall such amount exceed the amount of $100,000.00.

14.     "Chambers Street" shall mean West Park 22 LLC, the owner of 200 Chambers Street, Apt. 22B, New York, NY.

15.     "Chapter 11 Case" shall mean *In re Q.Y. Tang's Hwa Yuan Inc.*, Chapter 11 Case No. 22-11730 (DSJ), pending in the United States Bankruptcy Court for the Southern District of New York.

16.     "Claim" means any claim against the Debtor as defined in Bankruptcy Code §101(5).

17.     "Claimant" shall mean the Holder of an Allowed Claim.

18.     "Claims Objection Deadline" shall mean the last day for filing objections to Claims, other than with respect to Administrative Claims and Professional Fee Claims, which day

2

shall be one hundred and twenty (120) days after the Effective Date.  The filing of a motion to extend the Claims Objection Deadline shall automatically extend the Claims Objection Deadline until the final determination of such motion by the Bankruptcy Court.  No such extension of the Claims Objection Deadline shall constitute a modification or amendment of this Plan.

19.     "Class" shall mean a class of Claimants described in Article II.

20.     "Collateral Interests" shall mean the issued and outstanding shares of stock of the 100% Owned Entities and the shares of stock or membership interest owned by Tang in the Co-Owned Entities.

21.     "Confirmation Date" shall mean the date of entry of an Order by the Court confirming this Plan.

22.     "Confirmation Order" shall mean an Order of the Court confirming the Plan.

23.     "Co-owned Entities" shall mean 53rd St. Inc., 8th Ave Inc. and Chambers Street.

24.     "Court" shall mean the United States Bankruptcy Court for the Southern District of New York wherein the Chapter 11 Case is pending.

25.     "Debtor" shall mean Q.Y. Tang's Hwa Yuan Inc.

26.     "Deed " shall mean that certain Deed  by and among the Debtor and the New Owner, annexed hereto as Exhibit H.

27.     "Disputed Claim" means a Claim as to which a proof of claim is filed or is considered filed under Bankruptcy Rule 3003(b)(1) and as to which an objection: (1) has been timely filed; (2) has neither been overruled nor been denied by a final order; and (3) has not been withdrawn.

28.     "Effective Date" shall mean the first Business Day after the Confirmation Order becomes a Final Order.   "Entity" means an entity as defined in Bankruptcy Code §101(15), including Persons.

29.     "Estate" means the estate created for the Debtor in its Chapter 11 Case pursuant to Bankruptcy Code §541.

30.     "Fee Claim" means a Claim under Bankruptcy Code §§328, 330(a), 331, 363 or 503 for accrued professional compensation, including claims for compensation by a Retained Professional.

31.     "File" or "Filed" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

32.     "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Case, or the docket of any court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as

to which the time to appeal, or seek certiorari or move for a new trial, re-argument or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, re-argument or rehearing been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, or the new trial, re-argument or rehearing shall have been denied, resulted in no modification of such order or otherwise been dismissed with prejudice.

33.     "Holder" means an Entity or Person holding a Claim.

34.     "Karaoke Bar" shall mean 42 East Broadway Enterprise Inc.

35.     "Karaoke Bar Guaranty" shall mean that certain Guaranty of the Karaoke Bar in favor of New Owner, annexed hereto as Exhibit D.

36.     "Monthly Adequate Assurance Payments" means the payments by the Debtor of $82,500.00 to or for the benefit of Owemanco on before the 10th of each month including the month in which the Confirmation Order is entered.

37.     "Note" shall mean that certain Secured Promissory Note made by Tang in favor of New Owner, annexed hereto as Exhibit A.

38.     "New Owner" shall mean Owemanco's Limited Broadway Run LP the entity chosen by Owemanco to take ownership of the Property in accordance with the terms of this Plan.

39.     "Option Agreement" shall mean that certain Option Agreement for Purchase of Real Property by and between Tang and New Owner, annexed hereto as Exhibit B.

40.     "Option Sub-Account" shall mean a dedicated interest-bearing bank account held in the name of New Owner into which the Tang Proceeds shall be deposited and held in escrow pursuant to the terms of this Plan.

41.     "Option Period" shall mean the first twelve (12) months of the Amended Lease, so long as the Tenant is not in default, which term may be extended by an additional six (6) months by the payment of $200,000 by Tang to the New Owner.

42.     "Other Priority Claims" are all Priority Claims except Priority Tax Claims, Professional Claims, and fees of the U.S. Trustee.

43.     "Owemanco" shall mean Owemanco Mortgage NY Limited Partnership.

44.     "Owemanco Fee Payments" shall mean the payment(s) of Owemanco to the Reorganized Debtor in an amount equal to $100,000.00 less any total Professional Fee Claims paid from the Carve-Out, which payments shall be made as follow: (i) on the Effective Date - $50,000.00 (or such lower amount that would satisfy, full, all Professional Fee Claims); and (ii) with the remaining payments made on or before the date that is three (3) months from the Effective Date.

45.    "Owemanco Secured Claim" shall mean all Claims of Owemanco against the Debtor and its estate, which claim shall be treated solely as an Allowed Secured Claim.in the amount of $10,200,000.00, subject to the Carve-Out.

46.    "Person" means a person as defined in Bankruptcy Code §101(41).

47.    "Plan" shall mean this Joint Plan of Reorganization, now and as it may later be further restated, amended, supplemented or modified. The Plan shall be interpreted in accordance with the Bankruptcy Code. The terms used herein, including, but not limited to, such terms as "claim," "interest," "allowed," "secured," "unsecured," "affiliate," "insider," and "impaired" shall have the same meaning as under the Bankruptcy Code.

48.    "Plan Supplement Documents" shall mean, collectively, the Note, Pledge Agreement, Option Agreement, Deed Transfer Agreement, Tang Guaranty, Restaurant Guaranty, Karaoke Bar Guaranty and Amended Lease, as well as all agreements, documents and exhibits, as the same may be amended, modified, supplemented, or restated occasionally, that are necessary or appropriate to implement the Plan.

49.    "Pledge Agreement" shall mean that certain Pledge and Security Agreement by and between Tang and the New Owner, annexed hereto as Exhibit G.

50.    "Priority Claim" means any Claim which, if Allowed, would be entitled to priority under section 507 of the Bankruptcy Code.

51.    "Priority Tax Claim" means any Claim of a governmental unit of the kind specified in Bankruptcy Code §507(a)(8).

52.    "Property" shall mean the improved real property located at 42 East Broadway, New York, New York.

53.    "Professional Fee Claim" means a Claim under Bankruptcy Code sections 326, 327, 328, 330, 331, 503(b), 1103, or 1104 for compensation for services rendered or expenses incurred by any of the Debtor's retained professionals before the Effective Date.

54.    "Purchase Option" shall mean the right of Tang (or an entity to be formed by him) to purchase the Property from the New Owner during the first 12 months of the Amended Lease for a purchase price of $11,500,000.00, *provided, however,* that such option shall be extended for an additional six (6) months upon the payment of $200,000.00 to New Owner.

55.    "Reorganized Debtor" means the Debtor on and after the Effective Date.

56.    "Restaurant" shall mean 42-44 East Broadway Restaurant Inc.

57.    "Restaurant Guaranty" shall mean that certain Guaranty of the Restaurant in favor of New Owner, annexed hereto as Exhibit E.

58.     "Tang" shall mean Chen Lieh Tang, the holder of 100% of the equity interests in the Debtor.

59.     "Tang Proceeds" shall mean Tang's portion of the proceeds from the sale of the Collateral Interests or all or any portion of the property owned by the Co-Owned Entities or the 100 % Owned Entities.

60.     "Tang's Guaranty Claim" shall mean the personal liability of Tang to the New Owner in the amount of $3,500,000.00, provided that such amount shall be reduced to $2,500,000.00 in the event that Tang timely exercises the Purchase Option and completes the purchase of the Property pursuant to the terms of the Option Agreement.

61.     "Tang Guaranty" shall mean that certain Guaranty of Tang in favor of the New Owner, annexed hereto as Exhibit F.

62.     "U.S. Trustee" means the Office of the United States Trustee for the Southern District of New York.

<u>Rules of Construction</u>

1.     The rules of construction in Bankruptcy Code section 102 apply to this Plan to the extent not inconsistent with any other provision in this Section I.

2.     In computing any period prescribed or allowed by the Plan, unless otherwise provided, Bankruptcy Rule 9006(a) shall apply. If any act is required to be performed on a date that is not a Business Day, then the performance of such act may be completed on the next succeeding Business Day, but shall be considered to have been completed as of the required date. Enlargement of any period prescribed or allowed by the Plan shall be governed by Bankruptcy Rule 9006(b).

3.     A term used in this Plan and not defined in this Plan has the meaning attributed to that term in the Bankruptcy Code or the Bankruptcy Rules.

4.     The definition given to any term or provision supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement or the Plan Documents.

5.     Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

6.     Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms. No material change to the form or terms may be made after the Confirmation Date without the consent of any party materially affected.

7.     Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

8.      Unless otherwise indicated, the phrase "under the Plan" and the words "herein" and "hereto" and similar words or phrases refer to this Plan in its entirety rather than to only a part of the Plan.

9.      Unless otherwise specified, all references to sections, clauses or exhibits are references to this Plan's sections, clauses or exhibits.

10.     Section captions and headings are used only as convenient references and do not affect the Plan's meaning.

11.     All definitions in the Bankruptcy Code and below will be subject to the rules of construction in section 102 of the Bankruptcy Code. In addition, using the words "includes" or "including" is not limiting, and means "including but not limited to" and "including without limitation;" "and/or" means either or both, and the words "related to" or "relating to" mean regarding, from, based on, arising out of, or connected with.

12.     Nothing in this Plan is an admission or denial by any party of liability for, or the validity, priority, amount, or extent of any Claim, lien, or security interest asserted against the Debtor or against any third party.

## ARTICLE II

## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

A.      Administrative Claims

1.      General Administrative Claims

Except as otherwise provided herein and subject to Bankruptcy Code §§328, 330(a) and 331, each Holder of an Allowed General Administrative Claim will be paid the full amount of such Allowed Claim in Cash: (a) on or as soon as reasonably practicable after the Effective Date; (b) if such Claim is Allowed after the Effective Date, on or as soon as practicable after the date such Claim is Allowed; (c) upon such other terms as may be agreed upon by such Holder and the Debtor; or (d) as otherwise ordered by the Bankruptcy Court.

2.      Fee Claims

Retained Professionals, including without limitation other entities asserting a Professional Fee Claim for services rendered before the Confirmation Date, must File and serve on the Debtor, the United States Trustee, and such other Entities who are designated by the Bankruptcy Rules or any order of the Bankruptcy Court an application for final allowance of such Professional Fee Claim no later than sixty (60) days after the Confirmation Date.  Objections to any Professional Fee Claim must be Filed and served on the Debtor, the United States Trustee, and the requesting party in accordance with the notice of the hearing on such Professional Fee Claim. Administrative Expenses incurred by professionals retained by the Debtor shall be paid in full (i) on the Effective Date from the Carve Out; and (ii) thereafter  from the Owemanco Fee Payments and/or from the Reorganized Debtor/Tang.

B.    Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim due and payable on or prior to the Effective Date shall receive, as soon as reasonably practicable after the Effective Date, on account of such Claim: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by the Debtor and such Holder; provided, however, that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Debtor, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period not more than five (5) years after the Petition Date, pursuant to Bankruptcy Code §1129(a)(9)(C).

C.    Fees Payable to the United States Trustee

The Debtor shall pay all United States Trustee quarterly fees under 28 U.S.C. §1930(a)(6), plus interest due and payable under 31 U.S.C. §3717, on all disbursements including Plan payments and disbursements in and outside the ordinary course of the Debtor's business, until the entry of a Final Order closing the Chapter 11 Case, dismissal of the Chapter 11 Case, or conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.


ARTICLE III

Classification of Claims and Interests

All claims and interests against the Debtor shall be divided into the following classes:

CLASS 1. The Owemanco Claim.

CLASS 2. Other Priority Claims.

CLASS 3. The Allowed Unsecured Claims of non-insider general unsecured claimants of the Debtor, to the extent not included in another class of claims, including any claims arising from the rejection of executory contracts and unexpired leases.

CLASS 4. The Unsecured Claims of Tang against the Debtor and equity security interests in the Debtor.

ARTICLE IV

A.   Treatment Of Claims and Interests Not Impaired Under the Plan

Class 2. Unless otherwise agreed to by Holders of Allowed Class 2 Claims and the Debtor, each Holder of an Allowed Other Priority Claim will receive payment in full on account of their Allowed Class 2 Claim on the Effective Date.  Class 2 Claims are unimpaired under this Plan and are not entitled to vote to accept or reject this Plan.

Class 3. Unless otherwise agreed to by Holders of Allowed Class 3 Claims and the Debtor, each Holder of an Allowed General Unsecured Claim will receive payment in full on account of their Allowed Class 3 Claim on the Effective Date. Class 3 Claims are unimpaired under this Plan and are not entitled to vote to accept or reject this Plan.

CLASS 4. Tang shall retain his equity interests in the Reorganized Debtor, and any and all of his other Class 4 Claims shall be deemed extinguished and cancelled upon the Effective Date and shall receive no distribution under this Plan. Class 4 Claims and Interests are unimpaired under this Plan and are deemed to accept this Plan.

B. Treatment Of Claims and Interests Impaired Under The Plan

CLASS 1. In full and final satisfaction of all Class 1 Allowed Claims, on the Effective Date the Debtor shall transfer title to the Property to the New Owner, subject to the Option. Class 1 Claims are impaired under this Plan and are entitled to vote to accept or reject this Plan, the Holder of Class 1 Claims, as Co-Proponent of the Amended Plan, accepts the Plan.

ARTICLE V

Means For Execution of the Plan

A. The Global Settlement

The Plan is the product of extensive negotiations between, and a settlement by and among the Debtor, the Debtor's principal, Tang, and Owemanco, pursuant to which the Property will be transferred to the New Owner in full and final satisfaction of the Owemanco Claim against the Debtor. Contemporaneously with the transfer of the Property, the New Owner and one of the Tenants, the Restaurant will enter into an amended lease, covering the entire building for a term of thirty-six (36) months. The amended lease will be a triple-net lease (with real property taxes paid directly to the New Owner) and provide for base rent as follows: (i) for the first 18 months of the lease, $100,000/month rent; and (ii) for months 19-36, $85,000/month rent. Upon the Effective Date of the Plan the Karaoke Bar's lease shall be terminated. Pending confirmation of this Plan, the Debtor shall continue to make monthly adequate protection payments to Owemanco in the amount of $82,500.00.

In conjunction with the transfer of the Property to the New Owner, (i) the New Owner will grant to Tang (or an entity to be formed by him) the Purchase Option; (ii) Tang will remain personally liable to New Owner in the amount of $3,500,000.00; (iii) the Tenant shall guaranty Tang's personally liability to New Owner; and (iv) Tang will guaranty the rent payable by the Tenant under the Amended Lease with the New Owner. In the event that Tang timely exercises the Purchase Option and completes the purchase of the Property pursuant to the terms of the Option Agreement, his personal liability to New Owner on account of the Tang Guaranty Claim shall be reduced to $2,500,000.00. Interest on the Tang Guaranty Claim shall accrue at 12% per annum, and all amounts due and owing on account of the Tang Guaranty Claim shall be payable in a balloon payment at the conclusion of the 36 month term of the Amended Lease unless paid prior thereto.

To secure his obligation under the Tang Guaranty Claim, Tang shall pledge to New Owner (a) 100% of his 50% interests in the Co-owned Entities; together with (b) his 100% interest in (i) the Restaurant.  In addition, the Tenant under the Amended Lease shall secure its guaranty of Tang's Guaranty Claim by granting the New Owner a lien on their assets including the furniture, fixture and equipment located at the Property.

In the event that any of the Collateral Interests or all or any portion of the property owned by the Co-Owned Entities or the 100% Owned Entities is sold while Tang's Guaranty Claim is outstanding, the Tang Proceeds shall be transferred to New Owner to be held in an interest bearing escrow account.  The initial $1.3 M of Tang Proceeds shall be applied by New Owner to the Tang Guaranty Claim.  The next $4 M of proceeds will be placed in the Option-Sub-Account and shall be available to Tang to exercise the Purchase Option.  Thereafter, Tang Proceeds shall be applied 65% towards the Purchase Option and 35% towards the Tang Guaranty Claim.  During the Option Period, Tang may elect to apply any or all of the funds in the Option Sub-Account to exercise the Purchase Option.  In the event that Tang does not timely exercise the Purchase Option and complete the purchase of the Property pursuant to the terms of the Option Agreement, the New Owner shall apply any of the funds held in the Option Sub-Account towards payment of the Tang Guaranty Claim.

During the Option Period, in the event that Tang determines to swap his interests in 8th Avenue Inc. and Chambers Street for the 50% interest in 53rd St. Inc. that he currently does not own, New Owner agrees that it will release its lien upon the interests in 8th Avenue Inc. and Chambers Street upon delivery to it of the issued and outstanding shares of 53rd St. Inc. that Tang does not currently own along with an affidavit of Tang attesting to the fact that the shares in New Owner's possession constitute 100% of the issued and outstanding shares of 53rd St. Inc. and that the real property owned by 53rd St. Inc. is free and clear of all liens, claims and encumbrances. All overages held by the New Owner shall be remitted to Tang.

During the Option Period, the New Owner agrees that it will not sell or encumber the Property in any way without Tang's prior written consent, which consent may be withheld for any reason or no reason at all at Tang's sole discretion.

The Plan Supplement documents provide for the release of all claims by and among Tang, the Tenants, and Owemanco not otherwise addressed by such Plan Supplement Documents.

B.    Objections to a Claim must be filed by the Claims Objection Deadline, provided that the Reorganized Debtor may request extensions of the Claims Objection Deadline, or of any Bankruptcy Court approved extensions thereof, by filing a motion with the Bankruptcy Court. A motion seeking to extend the deadline to object to any Claim is not an amendment to the Plan.

C.    Form of Distributions. Unless otherwise agreed by the Debtor or Reorganized Debtor, as applicable, and the recipient of a distribution under this Plan or the Plan Documents, all distributions will be made, at the option of the Reorganized Debtor, by a check by first class mail, postage prepaid or wire transfer.

D.    No payments or distributions will be made regarding all or any part of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have

been determined by a final order, and the Disputed Claim has become an Allowed Claim; provided, however, that if only a portion of such Claim is an Allowed Claim, the Reorganized Debtor may, in its discretion, make a distribution on behalf of such Claim that is an Allowed Claim.

## ARTICLE VI

### Liquidation Analysis

The Debtor's assets are comprised of the Property, two leases for use and occupancy of the Property, its claims for rental arrears and cash on hand.  In the course of the Chapter 11 Case, the Bankruptcy Court lifted the automatic stay to permit Owemanco to enforce its rights and remedies against the Debtor, the Restaurant and the Karaoke Bar.  In the event that the Plan is not confirmed, Owemanco will exercise its foreclosure and eviction rights and the Debtor will lose both its Property and its sole sources of rental revenue.  Without a prospect of reorganization, the Chapter 11 Case would either be dismissed or converted to one under Chapter 7 (which would also add an additional layer of administrative expenses on account of the appointed Chapter 7 trustee).  No distributions to creditors other than Owemanco would be made in either scenario.  Accordingly, the Debtor submits that creditors, including Owemanco, will receive on account of their claims as a result of confirmation of the Plan and distributions under the Plan more than as a result of the conversion of this case to one under Chapter 7 of the Bankruptcy Code.

## ARTICLE VII

### Provisions For The Assumption And Rejection Of Executory Contracts And Unexpired Leases

As of the date of entry of the Confirmation Order, the Debtor shall be deemed to have rejected each executory contract and unexpired lease not previously assumed.

Notwithstanding anything to the contrary provided herein, all Claims arising from the rejection (if any) of Executory Contracts or Unexpired Leases must be Filed within the later of: (a) 30 days after the entry of an order of the Bankruptcy Court approving any such rejection; and (b) the first Business Day that is 30 days following the Effective Date.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claim are not timely Filed will be forever barred from assertion against the Debtor, its Estate and property of the Post-Confirmation Debtor, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.

## ARTICLE VIII

## Post-Petition Management

Tang will act on behalf of the Debtor to implement post-confirmation obligations under the Plan.  As the Property is being transferred to the New Owner, there will otherwise be no need for anyone to manage the Debtor's business and financial affairs post-confirmation.

## ARTICLE IX

## Substantial Consummation

As a condition precedent to substantial consummation of the Plan, all administrative expenses allowed under Code § 503(b) and approved by Court order after notice and hearing shall be paid in cash.

## ARTICLE X

## Conditions Precedent

(a)     It shall be a condition to Confirmation of the Plan that:

(i) all provisions, terms and conditions hereof are approved in the Confirmation Order; and

(ii) the Debtor has made the Monthly Adequate Assurance Payments

(b)     It shall be a condition to the Effective Date that

(i) The Confirmation Order shall be a Final Order in form and substance acceptable to the Debtor and Owemanco; and

(ii) The Plan Supplement Documents are fully executed and approved by the Bankruptcy Court.

## ARTICLE XI

### Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, to the extent legally permissible, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Persons and Entities with respect to all matters related to the Chapter 11 Case, the Debtor and the Plan, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any Claim;

2.      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.      resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable, and to adjudicate and, if necessary, liquidate, any Claims arising under any Executory Contract or Unexpired Lease;

4.      resolve any issues related to any matters adjudicated in the Chapter 11 Case;

5.      resolve any issues related to any order entered by the Bankruptcy Court in the Chapter 11 Case;

6.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

7.      decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Post-Confirmation Debtor after the Effective Date; provided that the Post-Confirmation Debtor shall reserve the right to commence actions in all appropriate forums and jurisdictions;

8.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

9.      resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.     issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan, except as otherwise provided in the Plan;

11.     enforce the exculpations and injunctions contained in the Plan;

12.     resolve any cases, controversies, suits or disputes with respect to any injunction, exculpation or other provisions contained in the Plan, and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such provisions;

13.     enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

14.     resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

15.     enter an order and final decree closing the Chapter 11 Case.

<u>ARTICLE XII</u>

Provisions For Resolving Disputed Claims

12.1     <u>*Objections to and Estimation of Claims*</u>.

From and after the Effective Date, only the Reorganized Debtor may object to the allowance of any Claim or Administrative Claim.  After the Effective Date, the Reorganized Debtor shall be accorded the power and authority to allow or settle and compromise any Claim without notice to any other party, or approval of, or notice to the Bankruptcy Court.  In addition, the Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Reorganized Debtor has previously objected to such Claim.  Unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtor shall serve and file any objections to Claims and Equity Interests as soon as practicable, but in no event later then the Claims Objection Deadline.

12.2     <u>No Distributions Pending Allowance</u>.

Notwithstanding any other provision in this Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

14

12.3    Distributions on Account of Disputed Claims Once They Are Allowed.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Reorganized Debtor shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, without any interest to be paid on account of such Claim.

12.4    Reserves.

As of and after the Effective Date with respect to distributions to be made under the Plan, to the extent that a Claim is a Disputed Claim and if the Claim was an Allowed Claim that the Holder of the Claim would be entitled to a distribution, the Reorganized Debtor shall establish a reserve for the payment of any such Disputed Claims to the extent such Disputed Claim becomes an Allowed Claim.  The amount reserved for each Disputed Claim shall be the amount that the Holder of such Disputed Claim would have been entitled to receive under the Plan if it was an Allowed Claim based upon the Claim being the lower of: (i) the amount set forth in a Proof of Claim Filed by the Holder of such Claim, or if no Proof of Claim has been Filed, the Scheduled amount set forth for such Claim if it is shown on the Schedules as being noncontingent, liquidated, and undisputed and (ii) the estimated amount of such Claim for distribution purposes, as determined by the Bankruptcy Court. As soon as practicable after (and to the extent) that a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor shall make a payment on account of such Allowed Claim from the reserve established for such Disputed Claim that becomes an Allowed Claim, and any remaining amount reserved on account of such Disputed Claim shall be released from the reserve and either: (i) held by the Reorganized Debtor for distribution to all Holders of Allowed Claims in accordance with the Plan; or (ii) if there are no such other Holders of Allowed Claims, the remaining amount reserved on account of such Disputed Claim shall be paid to the Reorganized Debtor.

_

## ARTICLE XIII

### Modification of the Plan of Reorganization

Modification Before Confirmation - Modification to the Plan may be proposed in writing by the Debtor at any time before entry of the Confirmation Order, provided the Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Code, with the exception of subsection (a)(8) of § 1123. After the modification is filed with the Court, the Plan is modified.

Modification After Confirmation – If the Plan has been confirmed, the Plan may be modified at any time after entry of a confirmation order and before its substantial consummation, provided that such Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Code with the exception of subsection (a)(8) of § 1123, the circumstances warrant such modification and the Court, after notice and a hearing, confirms such Plan, as modified.

Effect of Modification on Balloting. A holder of a claim or interest that has accepted or rejected the Plan and whose interests are not materially and adversely affected by the proposed modifications shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Court, the holder changes its previous acceptance or rejection.

ARTICLE XIV

EXCULPATION, INJUNCTION AND RELATED PROVISIONS

*1.   Exculpation*

TO THE EXTENT PERMISSIBLE UNDER BANKRUPTCY CODE §1125(e), THE DEBTOR AND ITS PROFESSIONALS SHALL NEITHER HAVE, NOR INCUR ANY LIABILITY TO ANY ENTITY FOR ACTS BEFORE THE EFFECTIVE DATE TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH, OR RELATED TO FORMULATING, NEGOTIATING, PREPARING, DISSEMINATING, IMPLEMENTING, ADMINISTERING, CONFIRMING OR EFFECTING THE CONSUMMATION OF THE PLAN, THE DISCLOSURE STATEMENT, OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, OR ANY ACT BEFORE THE EFFECTIVE DATE TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR IN CONTEMPLATION OF THE RESTRUCTURING OF THE DEBTOR'S ASSETS AND LIABILITIES; PROVIDED, HOWEVER, THAT THE FOREGOING "EXCULPATION" SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM SUCH PERSON'S OR ENTITY'S GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, ULTRA VIRES ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, THE DEBTOR SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO ITS DUTIES AND RESPONSIBILITIES UNDER THE PLAN.

NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTOR, OR ANY OF THE DEBTOR'S ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE DEBTOR'S PROPERTY, FOR ANY LIABILITY, INCLUDING

UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS (OR ANY CRIMINAL LAWS) OF THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT.

    2.   *Injunction*

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ALL ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES AGAINST THE DEBTOR OR PROPERTY OF THE DEBTOR'S ESTATE, INCLUDING BUT NOT LIMITED TO THE UNIT, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST ANY PERSON OR ENTITY ENTITLED TO EXCULPATION UNDER THE PLAN, ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES OF THE DEBTOR; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST ANY ENTITY ENTITLED TO EXCULPATION ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES OF THE DEBTOR; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN, CLAIM OR ENCUMBRANCE OF ANY KIND AGAINST ANY PERSON OR ENTITY ENTITLED TO EXCULPATION ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES OF THE DEBTOR; AND (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY ENTITY ENTITLED TO EXCULPATION ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES, UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF ON OR BEFORE THE CONFIRMATION DATE, AND NOTWITHSTANDING ANY INDICATION IN A PROOF OF CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO BANKRUPTCY CODE §553 OR OTHERWISE; PROVIDED, HOWEVER, THAT THE FOREGOING INJUNCTION SHALL HAVE NO EFFECT ON THE LIABILITY OF ANY PERSON OR ENTITY THAT RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM SUCH PERSON'S OR ENTITY'S GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, ULTRA VIRES ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, THE DEBTOR SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO ITS DUTIES AND RESPONSIBILITIES UNDER THE PLAN.

NOTHING IN THE PLAN OR THE CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE AND LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST THE DEBTOR, OR ANY OF THE DEBTOR'S ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR THE DEBTOR'S PROPERTY, FOR ANY LIABILITY, INCLUDING UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS (OR ANY CRIMINAL LAWS) OF THE UNITED STATES OR ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT.

## ARTICLE XV

### General Provisions

*1.  Payment of Statutory Fees*

All fees and any applicable interest payable pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date of the Plan.  Thereafter, all fees, and any applicable interest, payable pursuant to 28 U.S.C. § 1930 after the Effective Date shall be paid prior to the closing of the Chapter 11 Case when due or as soon thereafter as practicable.

*2.  Quarterly Reports*

The Post-Confirmation Debtor shall file quarterly reports after the Confirmation Date and provide copies to the U.S. Trustee, and schedule post-confirmation status conferences with the Court which shall be held subject to order of the Court.

*3.  Modification of Plan*

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Plan Proponents  reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, Post-Confirmation Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with Bankruptcy Code §1127(b) or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

*4.  Revocation of Plan*

The Debtor and Owemanco reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtor and Owemanco revoke or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or

compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against the Debtor or any other Entity, or any Interests; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor, or any other Entity.

5.      *Successors and Assigns*

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

6.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order becomes a Final Order. Neither the filing of the Plan, any statement or provision contained in the Plan, nor the taking of any action by the Debtor or any other Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor with respect to the Holders of Claims or Interests or other Entity; or (2) any Holder of a Claim or an Interest or other Entity prior to the Effective Date.

7.      *Further Assurances*

The Debtor or the Post-Confirmation Debtor, as applicable, all Holders of Claims receiving distributions hereunder, and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

8.      *Severability*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court, or any other court with jurisdiction over the Chapter 11 Case, to be invalid, void or unenforceable, the Bankruptcy Court, or any other court with jurisdiction over the Chapter 11 Case, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, provided that any such alteration or interpretation must be in form and substance acceptable to the Debtor and Owemanco; provided further that the Debtor or Owemanco may seek an expedited hearing before the Bankruptcy Court, or any other court with jurisdiction over the Chapter 11 Case, to address any objection to any such alteration or interpretation of the foregoing. Notwithstanding any such order by the Bankruptcy Court, alteration or interpretation, the

remainder of the terms and provisions of the Plan shall remain in full force and effect. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

9.      *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor shall be sent to:

WHITE & WOLNERMAN, PLLC
950 THIRD AVE., 11TH FLOOR
NEW YORK, NEW YORK 10022
Attn:   David Y. Wolnerman, Esq.
dwolnerman@wwlawgroup.com

10.     Exemption from Transfer Taxes

Under section 1146(a) of the Bankruptcy Code, Debtor's or Reorganized Debtor's delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, whether occurring before or after the Confirmation Date, including any deeds, bills of sale or assignments executed with any sale or disposition of assets contemplated by this Plan, shall not be subject to any stamp tax, real estate transfer tax, excise tax, sales tax, use tax or other similar tax.

11.     Confirmation of the Plan shall bind the Debtor and every creditor of the Debtor whether or not the claim of such creditor is impaired under the Plan and whether or not such creditor has accepted the Plan.

12.     The entry of the Confirmation Order shall vest the assets of this estate and the Debtor in the Reorganized Debtor, free and clear of all claims of creditors, except as set out in the Plan.

Dated: August 7, 2024

**Q.Y. Tang's Hwa Yuan Inc.**

By: /s/ Chen Lieh Tang
      Chen Lieh Tang, President

**Owemanco Mortgage NY Limited Partnership**

By: /s/ Sohail Zayona
      Sohail Zayona, Authorized Signatory

20

Prepared by:

David Y. Wolnerman, Esq.
Randolph E. White, Esq.
White & Wolnerman, PLLC
Attorneys for Debtor
950 Third Ave., 11th Floor
New York, New York 10022

Eric P. Wainer, Esq.
Lawrence & Walsh, P.C.
Attorneys for Owemanco Mortgage NY Limited Partnership
215 Hilton Avenue
Hempstead, New York 11550